UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| 5 STAR INVESTMENT GROUP, LLC, | ) | CASE NO.      16-30078-hcd |
| 5 STAR PORTLAND HOLDINGS, LLC, | ) | |
| 5 STAR INVESTMENT GROUP V, LLC, | ) | SUBSTANTIVELY CONSOLIDATED |
| 5 STAR COMMERCIAL, LLC, | ) | CHAPTER 11s |
| 5 STAR INVESTMENT GROUP VII, LLC, | ) | |
| 5 STAR HOLDINGS, LLC, | ) | |
| 5 STAR INVESTMENT GROUP III, LLC, | ) | |
| 5 STAR INDIANA HOLDINGS, LLC, | ) | |
| 5 STAR INVESTMENTGROUP II, LLC, | ) | |
| 5 STAR INVESTMENT GROUP IV, LLC, | ) | |
| and 5 STAR CAPITAL FUND, LLC, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |
| DOUGLAS R. ALDESPERGER as TRUSTEE | ) | |
| FOR THE BAKRUPTCY ESTATE OF | ) | |
| 5 STAR INVESTMENT GROUP, LLC, et al., | ) | |
| | ) | ADVERSARY PROCEEDING |
| Plaintiff, | ) | NO. |
| vs. | ) | |
| | ) | |
| SOUTHERN EQUITY GROUP TRUST | ) | |
| and TC COMMERCIAL, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>COMPLAINT</u>**

Plaintiff, Douglas R. Adelsperger, as Chapter 11 Trustee (the "Trustee") for the substantively consolidated bankruptcy estates of 5 Star Investment Group, LLC, 5 Star Portland Holdings, LLC, 5 Star Investment Group V, LLC, 5 Star Commercial, LLC, 5 Star Investment Group VII, LLC, 5 Star Holdings, LLC, 5 Star Investment Group III, LLC, 5 Star Indiana Holdings, LLC, 5 Star Investment Group II, LLC, 5 Star Investment Group IV, LLC and 5 Star

Capital Fund, LLC (the "Debtors"), by counsel, for his Complaint against Southern Equity

Group Trust ("Southern") and TC Commercial, LLC ("TCC"), states as follows:

## INTRODUCTION

1.      On January 25, 2016 (the "Petition Date"), the Debtors each filed voluntary

petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy

Code"), in the United States Bankruptcy Court for the Northern District of Indiana, South Bend

Division, initiating eleven (11) separate bankruptcy cases (the "Bankruptcy Cases").

2.      On February 29, 2016, the Trustee was appointed as the Chapter 11 Trustee in

each of the Bankruptcy Cases.

3.      On June 24, 2016, the Court entered its *Order Granting Trustee's Motion for

Substantive Consolidation*, consolidating the Bankruptcy Cases for all post-petition purposes.

## JURSIDICTIONAL ALLEGATIONS

4.      This adversary proceeding is commenced pursuant to Bankruptcy Code §§ 544,

548, and 550, and Fed. R. Bank. P. 7001.

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334

and N.D. Ind. L.R. 200-1.

6.      Venue for this action is proper in the United States Bankruptcy Court for the

Northern District of Indiana pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(A),

(H), and (O).

8.      Pursuant to Local Rule B-7016-1, the Trustee consents to the entry of final orders

and/or judgments by the Bankruptcy Judge.

## FACTUAL ALLEGATIONS

9.      5 Star Commercial, LLC ("5 Star") is an Indiana limited liability company with its principal place of business formerly located in Mishawaka, Indiana. Earl Miller is the Manager of 5 Star.

10.     Southern is a living trust with undisclosed beneficiaries created by Earl Miller and Marlin H. Schwartz on December 12, 2014. Earl Miller and Marlin H. Schwartz are the Trustees of Southern. A copy of the trust document by which Southern was established is attached and incorporated as Exhibit 1.

11.     Upon information and belief, on or about March 9, 2015, Southern held a "Meeting of the Trustees", during which Earl Miller was appointed as Southern's Manager and "giv[en] absolute and sole authority… to make all decisions pertaining to Southern…" A copy of the Minutes of the Meeting of the Southern Trustees is attached and incorporated as Exhibit 2.

12.     TCC is a North Carolina limited liability company with no principal place of business. Upon information and belief, Earl Miller is the Manager of TCC.

**Village Apartments of Charleston, LLC**

13.     Village Apartments, LLC ("Village") is a South Carolina limited liability company, and, upon information and belief, its principal place of business is in Charleston, South Carolina. Prior to May of 2015, Village was the owner of a certain parcel of real estate commonly known as the Village Apartments, located at 325 Gulledge Street, Moncks Corner, South Carolina (the "Apartments"). The Apartments is a multi-unit residential apartment complex.

14.    Village Apartments of Charleston, LLC ("VAC") is an Indiana limited liability company with its principal place of business in Middlebury, Indiana. Earl Miller is the Manager of VAC.

15.    LB 2015, LLC ("LB") is a New York limited liability company. Upon information and belief, Lillian Lebron is the Manager of LB, and its principal place of business is in Patterson, New York.

16.    RB 2015, LLC ("RB") is a New York limited liability company. Upon information and belief, Rafael Lebron is the Manager of LB, and its principal place of business is in Patterson, New York.

17.    Upon information and belief, on or about January 19, 2015, 5 Star entered into a purchase agreement with Village to buy the Apartments (the "Apartments Agreement"). An unsigned copy of 5 Star's Letter of Intent with respect to the Apartments Agreement is attached and incorporated as Exhibit 3.

18.    On or about March 5, 2015, VAC filed Articles of Incorporation with the Indiana Secretary of State. A copy of VAC's Certificate of Organization is attached and incorporated as Exhibit 4.

19.    Upon information and belief, on or about April 20, 2015, 5 Star and VAC entered into an Assignment Agreement (the "Apartments Assignment"), pursuant to which 5 Star assigned the Apartments Agreement and its interests in the Apartments to VAC. A copy of the Assignment Agreement is attached and incorporated as Exhibit 5.

20.    Upon information and belief, on or about April 20, 2015 (effective March 5, 2015), VAC executed an Operating Agreement, a copy of which is attached and incorporated as Exhibit 6.

21.     Pursuant to the VAC Operating Agreement (Schedule I), Southern owns an 85.25% member interest in VAC, LB owns a 7.375% member interest in VAC, and RB owns a 7.375% member interest in VAC.

22.     Upon information and belief, on or about April 21, 2015, VAC held a Meeting of the Members, wherein LB and RB each agreed to contribute $250,000.00 toward the purchase price of the Property. A copy of the Resolution and Certification of Village Apartment of Charleston, LLC memorializing the meeting is attached and incorporated as Exhibit 7.

23.     Upon information and belief, VAC purchased the Apartments from Village on May 12, 2015, and LB and RB each contributed $250,000.00 toward the purchase price. A copy of an Unofficial Berkeley County Property Card for the Apartments is attached and incorporated as Exhibit 8.

24.     5 Star received nothing of value in exchange for its assignment of the Apartments Agreement or its interests in the Apartments to VAC or from VAC's ultimate purchase of the Apartments from Village.

### Twin City of Winston Salem LLC

25.     Dutch Village Apartments, LLC ("Dutch") is a North Carolina limited liability company with its principle place of business in Winston Salem, North Carolina. Prior to March of 2015, Dutch was the owner of a certain parcel or real estate commonly known as Twin City Townhomes, located at 1500 Zuider Zee Drive, Winston Salem, North Carolina (the "Townhomes").

26.     Twin City of Winston Salem LLC ("Twin City") is an Indiana limited liability company with its principle place of business in Middlebury, Indiana. Earl Miller is the Manager of Twin City.

- 5 -

27.      On or about March 6, 2015, Twin City filed Articles of Incorporation with the Indiana Secretary of State. A copy of Twin City's Certificate of Organization is attached and incorporated as Exhibit 9.

28.      On or about March 7, 2015, 5 Star entered into a Purchase Agreement with Dutch to buy the Townhomes (the "Townhomes Agreement"). A copy of the Townhomes Agreement is attached and incorporated as Exhibit 10.

29.      On or about April 29, 2015, TCC filed its Articles of Organization with the North Carolina Secretary of State. A copy of TCC's Articles of Organization is attached and incorporated as Exhibit 11.

30.      Upon information and belief, on or about June 19, 2015, 5 Star and Twin City entered into an Assignment Agreement (the "Townhomes Assignment"), pursuant to which 5 Star assigned the Townhomes Agreement and its interests in the Townhomes to Twin City. A copy of the Townhomes Assignment is attached and incorporated as Exhibit 12.

31.      Upon information and belief, on or about July 15, 2015 (effective July 1, 2015), Twin City executed an Operating Agreement, a copy of which is attached and incorporated as Exhibit 13.

32.      Pursuant to the Twin City Operating Agreement (Schedule I), Southern owns a 90% member interest in Twin City, 5 Star owns a 5% member interest in Twin City, and TCC owns a 5% member interest in Twin City.

33.      Upon information and belief, Twin City purchased the Townhomes from Dutch on July 20, 2015, and 5 Star contributed $1,950,800.00 toward the purchase price. A copy of the Bill of Sale and Blanket Assignment for the Townhomes is attached and incorporated as Exhibit 14.

34. Upon information and belief, the Townhomes was the subject of a foreclosure action in Forsyth County, NC and was sold at a foreclosure sale.

## COUNT I
### (Declaratory Judgment as to Southern's Member Interest in VAC)

35. The Trustee incorporates and restates the allegations contained in the preceding paragraphs 1 through 34 as if fully set forth herein.

36. In his capacity as 5 Star's Manager, Miller owed 5 Star a fiduciary duty not to appropriate to his own direct or indirect use and benefit a business opportunity that in law or equity belonged to 5 Star.

37. By virtue of the Apartments Agreement and the Apartments Assignment, a member interest in VAC was a business opportunity in which 5 Star held a legal or equitable interest.

38. Miller appropriated 5 Star's business opportunity to his own direct or indirect use and benefit by granting an 85.25% member interest in VAC to Southern.

39. Miller breached the fiduciary duty he owed to 5 Star by failing maintain the Apartments Agreement with 5 Star or to offer 5 Star the 85.25% member interest in VAC that was granted to Southern.

40. Miller breached the fiduciary duty he owed to 5 Star by fraudulently transferring 5 Star's legal or equitable interest in VAC to Southern.

41. As a result of Miller's breach, the 85.25% member interest in VAC granted to Southern rightfully belongs to 5 Star.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in favor of the Trustee and against Southern on Count I as follows: (i) declaring that 5 Star is the rightful owner of Southern's 85.25% member interest in VAC; (ii) declaring that Southern owns no

member interest in VAC; and (iii) granting the Trustee all other just and proper relief.

## COUNT II
### (Fraudulent Transfer Relating to Southern's Member Interest in VAC
### Pursuant to 11 U.S.C. § 544 and I.C. §§ 32-18-2-14, -15, and -17)

42.     The Trustee incorporates and restates the allegations contained in the preceding paragraphs 41 as if fully set forth herein.

43.     The assignment to VAC of the Apartments Agreement and 5 Star's interests in the Apartments (the "Apartments Transfer") was a transfer of interest of 5 Star in property.

44.     The Apartments Transfer was made within four years of the Petition Date.

45.     The Apartments Transfer was made:

    a.     With actual intent to hinder, delay, or defraud creditors; or

    b.     Without 5 Star receiving a reasonably equivalent value in exchange for the Apartments Transfer; and

        i.     While 5 Star was engaged or was about to engage in a business or transaction for which the remaining assets of 5 Star was unreasonably small in relation to the business or transaction; or

        ii.     When 5 Star intended to incur or believed or reasonably should have believed that 5 Star would incur debts beyond its ability to pay the debts as they became due.

46.     In the alternative, 5 Star made the Apartments Transfer without receiving a reasonably equivalent value in exchange for the Apartments Transfer, and 5 Star was insolvent at that time or became insolvent as a result of the Apartments Transfer.

47.     Pursuant to Bankruptcy Code § 544 and Indiana Code §§ 32-18-2-14, -15, and -17, the Trustee is entitled to avoidance of the Apartments Transfer and a judgment for the value thereof.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in favor of the Trustee and against Southern on Count II as follows:  (i) declaring that the Apartments Transfer is avoidable pursuant to Bankruptcy Code § 544 and Indiana Code §§ 32-18-2-14, -15, and -17; (ii) declaring that the Trustee is the rightful owner of Southern's 85.25% member interest in VAC; (iii) declaring that Southern owns no member interest in VAC; (iv) avoiding the Apartments Transfer; (v) awarding the Trustee the value of the Apartments Transfer, plus incidental and consequential damages, loss of use, loss of distributions, costs, prejudgment interest, and attorney fees; and (vi) granting the Trustee all other just and proper relief.

**COUNT III**
**(Fraudulent Transfer Relating to Southern's Member Interest in VAC**
**Pursuant to 11 U.S.C. § 548)**

48.     The Trustee incorporates and restates the allegations contained in the preceding paragraphs 1 through 47 as if fully set forth herein.

49.     The Apartments Transfer was made within two years of the Petition Date.

50.     The Apartments Transfer was made with actual intent to hinder, delay, or defraud any entity to which 5 Star became indebted to, on or after the date the Apartments Transfer was made.

51.     5 Star received less than a reasonably equivalent value in exchange for the Apartments Transfer, and 5 Star was: (i) insolvent on the date the Apartments Transfer was made or became insolvent as a result of the Apartments Transfer; (ii) engaged in business or a transaction, or were about to engage in business or a transaction, for which any property

- 9 -

remaining with 5 Star was unreasonably small capital; or (iii) intended to incur, or believed that 5 Star would incur, debts that would be beyond 5 Star's ability to pay as such debts matured.

52.    Pursuant to Bankruptcy Code § 548, the Trustee is entitled to avoidance of the Apartments Transfer and a judgment for the value thereof

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in favor of the Trustee and against Southern on Count III as follows:  (i) declaring that the Apartments Transfer is avoidable pursuant to Bankruptcy Code § 548; (ii) declaring that the Trustee is the rightful owner of Southern's 85.25% member interest in VAC; (iii) declaring that Southern owns no member interest in VAC; (iv) avoiding the Apartments Transfer; (v) awarding the Trustee the value of the Apartments Transfer, plus incidental and consequential damages, loss of use, loss of distributions, costs, prejudgment interest, and attorney fees; and (vi) granting the Trustee all other just and proper relief.

## COUNT IV
### (Recovery of Southern's Member Interest in VAC Pursuant to 11 U.S.C. § 550)

53.    The Trustee incorporates and restates the allegations contained in the preceding paragraphs 1 through 52 as if fully set forth herein.

54.    Southern was the:

a.    Initial transferee of the Apartments Transfer or the entity for whose benefit such transfer was made; or

b.    The immediate or mediate transferee of the initial transferee or the person for whose benefit the Apartments Transfer was made.

55.    The Apartments Transfer, to the extent it is avoided pursuant to Bankruptcy Code §§ 544 and 548, may be recovered by the Trustee pursuant to Bankruptcy Code § 550(a)(1).

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in favor

of the Trustee and against Southern on Count IV as follows: (i) granting a judgment pursuant to Bankruptcy Code § 550(a)(1) declaring that the Trustee may recover, for the benefit of 5 Star's bankruptcy estate, the 85.25% member interest in VAC that was granted to Southern or the value thereof at the time of transfer; (ii) declaring that the Trustee is the rightful owner of Southern's 85.25% member interest in VAC; (iii) declaring that Southern owns no member interest in VAC; (iv) awarding the Trustee the value of the Apartments Transfer, incidental and consequential damages, loss of use, loss of distributions, costs, prejudgment interest, and attorney fees; and (v) granting the Trustee all other just and proper relief.

### COUNT V
### (Declaratory Judgment as to Southern's Member Interest in Twin City)

56.     The Trustee incorporates and restates the allegations contained in the preceding paragraphs 1 through 55 as if fully set forth herein.

57.     In his capacity as 5 Star's Manager, Miller owed 5 Star a fiduciary duty not to appropriate to his own direct or indirect use and benefit a business opportunity that in law or equity belonged to 5 Star.

58.     By virtue of the Townhomes Agreement and the Townhomes Assignment, a member interest in Twin City was a business opportunity in which 5 Star held a legal or equitable interest.

59.     Miller appropriated 5 Star's business opportunity to his own direct or indirect use and benefit by granting a 90% member interest in Twin City to Southern.

60.     Miller breached the fiduciary duty he owed to 5 Star by failing maintain the Townhomes Agreement with 5 Star or to offer 5 Star the 90% member interest in Twin City that was granted to Southern.

61.     Miller breached the fiduciary duty he owed to 5 Star by fraudulently transferring

- 11 -

5 Star's legal or equitable interest in VAC to Southern.

62.     As a result of Miller's breach, 5 Star is entitled to 90% of the value of the Townhomes at the time of the Townhomes Transfer.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in favor of the Trustee and against Southern and on Count V as follows:  (i) declaring that 5 Star is the rightful owner of 90% of the value of the Townhomes at the time of the Townhomes Transfer; and (ii) granting the Trustee all other just and proper relief.

**COUNT VI**
**(Fraudulent Transfer Relating to Southern's Member Interest in Twin City**
**Pursuant to 11 U.S.C. § 544 and I.C. §§ 32-18-2-14, -15, and -17)**

63.     The Trustee incorporates and restates the allegations contained in the preceding paragraphs 1 through 62 as if fully set forth herein.

64.     The assignment of the Townhomes Agreement and 5 Star's interests in the Townhomes to Twin City (the "Townhomes Transfer") was a transfer of interest of 5 Star in property.

65.     The Townhomes Transfer was made within four years of the Petition Date.

66.     The Townhomes Transfer was made:

a.     With actual intent to hinder, delay, or defraud creditors; or

b.     Without 5 Star receiving a reasonably equivalent value in exchange for the Townhomes Transfer; and

i.     While 5 Star was engaged or was about to engage in a business or transaction for which the remaining assets of 5 Star was unreasonably small in relation to the business or transaction; or

- 12 -

   ii.  When 5 Star intended to incur or believed or reasonably should have believed that 5 Star would incur debts beyond its ability to pay the debts as they became due.

67. In the alternative, 5 Star made the Townhomes Transfer without receiving a reasonably equivalent value in exchange for the Townhomes Transfer, and 5 Star was insolvent at that time or became insolvent as a result of the Townhomes Transfer.

68. Pursuant to Bankruptcy Code § 544 and Indiana Code §§ 32-18-2-14, -15, and -17, the Trustee is entitled to avoidance of the Townhomes Transfer and a judgment for 90% of the value thereof.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in favor of the Trustee and against Southern on Count VI as follows: (i) declaring that the Townhomes Transfer is avoidable pursuant to Bankruptcy Code § 544 and Indiana Code §§ 32-18-2-14, -15, and -17; (ii) awarding the Trustee 90% of the value of the Townhomes at the time of the Townhomes Transfer, plus incidental and consequential damages, loss of use, loss of distributions, costs, prejudgment interest, and attorney fees; and (iii) granting the Trustee all other just and proper relief.

## COUNT VII
### (Fraudulent Transfer Relating to Southern's Member Interest in Twin City Pursuant to 11 U.S.C. § 548)

69. The Trustee incorporates and restates the allegations contained in the preceding paragraphs 1 through 68 as if fully set forth herein.

70. The Townhomes Transfer was made within two years of the Petition Date.

71. The Townhomes Transfer was made with actual intent to hinder, delay, or defraud any entity to which 5 Star became indebted to, on or after the date the Townhomes Transfer was made.

72. In the alternative, 5 Star received less than a reasonably equivalent value in exchange for the Townhomes Transfer, and 5 Star was: (i) insolvent on the date the Townhomes Transfer was made or became insolvent as a result of the Townhomes Transfer; (ii) engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with 5 Star was unreasonably small capital; or (iii) intended to incur, or believed that 5 Star would incur, debts that would be beyond 5 Star's ability to pay as such debts as they matured.

73. Pursuant to Bankruptcy Code § 548, the Trustee is entitled to avoidance of the Townhomes Transfer and a judgment for 90% of the value thereof.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in favor of the Trustee and against Southern on Count VII as follows:  (i) declaring that the Townhomes Transfer is avoidable pursuant to Bankruptcy Code § 548; (ii) awarding the Trustee the 90% of the value of the Townhomes at the time of the Townhomes Transfer, plus incidental and consequential damages, loss of use, loss of distributions, costs, prejudgment interest, and attorney fees; and (iii) granting the Trustee all other just and proper relief.

### COUNT VIII
### (Recovery of Southern's Member Interest in Twin City Pursuant to 11 U.S.C. § 550)

74. The Trustee incorporates and restates the allegations contained in the preceding paragraphs 1 through 73 as if fully set forth herein.

75. Southern was the:

    a.    Initial transferee of the Townhomes Transfer or the entity for whose

benefit such transfer was made; or

b.      The immediate or mediate transferee of the initial transferee or the person for whose benefit the Townhomes Transfer was made.

76.      The Townhomes Transfer, to the extent it is avoided pursuant to Bankruptcy Code §§ 544 and 548, may be recovered by the Trustee pursuant to Bankruptcy Code § 550(a)(1).

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in favor of the Trustee and against Southern on Count VIII as follows: (i) granting a judgment pursuant to Bankruptcy Code § 550(a)(1) declaring that the Trustee may recover, for the benefit of 5 Star's bankruptcy estate, the value of 90% of the Townhomes at the time of the Townhomes Transfer; (ii) awarding the Trustee the 90% of the value of the Townhomes at the time of the Townhomes Transfer, plus incidental and consequential damages, loss of use, loss of distributions, costs, prejudgment interest, and attorney fees; and (iii) granting the Trustee all other just and proper relief.

## COUNT IX
### (Declaratory Judgment as to TCC's Member Interest in Twin City)

77.      The Trustee incorporates and restates the allegations contained in the preceding paragraphs 1 through 76 as if fully set forth herein.

78.      In his capacity as 5 Star's Manager, Miller owed 5 Star a fiduciary duty not to appropriate to his own direct or indirect use and benefit a business opportunity that in law or equity belonged to 5 Star.

79.      By virtue of the Townhomes Agreement and the Townhomes Assignment, a member interest in Twin City was a business opportunity in which 5 Star held a legal or equitable interest.

80.      Miller appropriated 5 Star's business opportunity to his own direct or indirect use

and benefit by granting a 5% member interest in Twin City to TCC.

81.     Miller breached the fiduciary duty he owed to 5 Star by failing to offer 5 Star the 5% member interest in Twin City that was granted to TCC.

82.     Miller breached the fiduciary duty he owed to 5 Star by fraudulently transferring 5 Star's legal or equitable interest in VAC to TCC.

83.     As a result of Miller's breach, 5 Star is entitled to 5% of the value of the Townhomes at the time of the Townhomes Transfer.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in favor of the Trustee and against Southern and on Count IX as follows:  (i) declaring that 5 Star is the rightful owner of 5% of the value of the Townhomes at the time of the Townhomes Transfer; and (ii) granting the Trustee all other just and proper relief.

**COUNT X**
**(Fraudulent Transfer Relating to TCC's Member Interest in Twin City**
**Pursuant to 11 U.S.C. § 544 and I.C. §§ 32-18-2-14, -15, and -17)**

84.     The Trustee incorporates and restates the allegations contained in the preceding paragraphs 1 through 83 as if fully set forth herein.

85.     The assignment of the Townhomes Agreement and 5 Star's interests in the Townhomes to Twin City (the "Townhomes Transfer") was a transfer of interest of 5 Star in property.

86.     The Townhomes Transfer was made within four years of the Petition Date.

87.     The Townhomes Transfer was made:

a.      With actual intent to hinder, delay, or defraud creditors; or

b.      Without 5 Star receiving a reasonably equivalent value in exchange for the Townhomes Transfer; and

- 16 -

       iii.       While 5 Star was engaged or was about to engage in a business or

transaction for which the remaining assets of 5 Star was unreasonably small in

relation to the business or transaction; or

       iv.       When 5 Star intended to incur or believed or reasonably should

have believed that 5 Star would incur debts beyond its ability to pay the debts as

they became due.

88.      In the alternative, 5 Star made the Townhomes Transfer without receiving a

reasonably equivalent value in exchange for the Townhomes Transfer, and 5 Star was insolvent

at that time or became insolvent as a result of the Townhomes Transfer.

89.      Pursuant to Bankruptcy Code § 544 and Indiana Code §§ 32-18-2-14, -15, and -

17, the Trustee is entitled to avoidance of the Townhomes Transfer and a judgment for 5% of the

value thereof.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in favor

of the Trustee and against Southern on Count X as follows:  (i) declaring that the Townhomes

Transfer is avoidable pursuant to Bankruptcy Code § 548; (ii) awarding the Trustee the 5% of the

value of the Townhomes at the time of the Townhomes Transfer, plus incidental and

consequential damages, loss of use, loss of distributions, costs, prejudgment interest, and

attorney fees; and (iii) granting the Trustee all other just and proper relief.

### COUNT XI
### (Fraudulent Transfer Relating to TCCs Member Interest in Twin City
### Pursuant to 11 U.S.C. § 548)

90.      The Trustee incorporates and restates the allegations contained in the preceding

paragraphs 1 through 89 as if fully set forth herein.

91.      The Townhomes Transfer was made within two years of the Petition Date.

92.    The Townhomes Transfer was made with actual intent to hinder, delay, or defraud any entity to which 5 Star became indebted to, on or after the date the Townhomes Transfer was made.

93.    In the alternative, 5 Star received less than a reasonably equivalent value in exchange for the Townhomes Transfer, and 5 Star was: (i) insolvent on the date the Townhomes Transfer was made or became insolvent as a result of the Townhomes Transfer; (ii) engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with 5 Star was unreasonably small capital; or (iii) intended to incur, or believed that 5 Star would incur, debts that would be beyond 5 Star's ability to pay as such debts as they matured.

94.    Pursuant to Bankruptcy Code § 548, the Trustee is entitled to avoidance of the Townhomes Transfer and a judgment for 5% of the value of the Townhomes at the time of the Townhomes Transfer.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in favor of the Trustee and against Southern on Count XI as follows:  (i) declaring that the Townhomes Transfer is avoidable pursuant to Bankruptcy Code § 548; (ii) awarding the Trustee the 5% of the value of the Townhomes at the time of the Townhomes Transfer, plus incidental and consequential damages, loss of use, loss of distributions, costs, prejudgment interest, and attorney fees; and (iii) granting the Trustee all other just and proper relief.

### COUNT XII
### (Recovery of TCC's Member Interest in Twin City Pursuant to 11 U.S.C. § 550)

95.    The Trustee incorporates and restates the allegations contained in the preceding paragraphs 1 through 94 as if fully set forth herein.

96.    Southern was the:

- 18 -

      a.      Initial transferee of the Townhomes Transfer or the entity for whose benefit such transfer was made; or

      b.      The immediate or mediate transferee of the initial transferee or the person for whose benefit the Townhomes Transfer was made.

97.     The Townhomes Transfer, to the extent it is avoided pursuant to Bankruptcy Code §§ 544 and 548, may be recovered by the Trustee pursuant to Bankruptcy Code § 550(a)(1).

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in favor of the Trustee and against Southern on Count XII as follows: (i) granting a judgment pursuant to Bankruptcy Code § 550(a)(1) declaring that the Trustee may recover, for the benefit of 5 Star's bankruptcy estate, the value of 5% of the Townhomes at the time of the Townhomes Transfer; (ii) awarding the Trustee the 5% of the value of the Townhomes at the time of the Townhomes Transfer, plus incidental and consequential damages, loss of use, loss of distributions, costs, prejudgment interest, and attorney fees; and (iii) granting the Trustee all other just and proper relief.

Respectfully submitted,
RUBIN & LEVIN, P.C.

By: */s/ John C. Hoard*

Deborah J. Caruso (Atty. No. 4273-49)
John C. Hoard (Atty. No. 8024-49)
Keenan C. Fennimore (Atty. No. 30609-49).
RUBIN & LEVIN, P.C.
135 N. Pennsylvania Street, Suite 1400
Indianapolis, Indiana 46204
Tel: (317) 634-0300
Fax: (317) 263-9411
Email:    dcaruso@rubin-levin.net
            johnh@rubin-levin.net
            kfennimore@rubin-levin.net
Attorneys for Douglas R. Adelsperger,
Trustee

G:\WP80\TRUSTEE\Adelsperger\5 STAR 86717101\Southern Equity Adversary\Complaint (final)\Complaint (final).doc