**OPERATING  AGREEMENT**

**OF**

**VILLAGE  APARTMENTS  OF CHARLESTON,  LLC**

**(An Indiana  Limited  Liability  Company)**

EXHIBIT 6

Village Apartments of Charleston, LLC
Operating Agreement

# TABLE OF CONTENTS

**ARTICLE 1- DEFINITIONS**................................................................................................. 5
    1.1    Definitions ...................................................................................... 5

**ARTICLE 2 - FORMATION OF THE COMPANY**.................................................. 7
    2.1    Formation.......................................................................................... 7
    2.2    Name................................................................................................ 7
    2.3    Registered Office and Registered Agent....................................... 7
    2.4    Principal Place of Business.............................................................. 7
    2.5    Term................................................................................................ 7
    2.6    Purposes and Powers...................................................................... 8
    2.7    Nature of Members' Interests......................................................... 8

**ARTICLE 3 - RIGHT AND DUTIES OF MANAGERS**.................................... 8
    3.1    Management..................................................................................... 8
    3.2    Number and Qualifications............................................................. 8
    3.3    Election and Term of Office............................................................ 9
    3.4    Resignation...................................................................................... 9
    3.5    Removal........................................................................................... 9
    3.6    Vacancies........................................................................................ 9
    3.7    Inspection of Books and Records.................................................... 9
    3.8    Compensation.................................................................................. 9
    3.9    Committees of the Managers.......................................................... 9
    3.10    Approval of Managers Required for Certain Transactions............. 9

**ARTICLE 4 - MEETINGS OF MANAGERS**.......................................................... 9
    4.1    Place of Meeting.............................................................................. 9
    4.2    Notice of Meeting............................................................................ 10
    4.3    Action by Managers; Quorum; Voting; Action Without a Meeting............... 10
    4.4    Adjournment................................................................................... 10

**ARTICLE 5 – MEMBERS**....................................................................................... 10
    5.1    Names and Addresses of Members................................................ 10
    5.2    Admission of Members................................................................... 10

**ARTICLE 6 – MEETINGS OF MEMBERS**........................................................ 11
    6.1    Annual Meeting of Members.......................................................... 11
    6.2    Special Meetings of Members......................................................... 11
    6.3    Notice of Meetings of Members..................................................... 11
    6.4    Record Date..................................................................................... 11
    6.5    Quorum........................................................................................... 11
    6.6    Actions by Members Other than for Election of Managers......................... 11
    6.7    Action by Members to Elect Managers........................................... 12
    6.8    List of Members Entitled to Vote.................................................... 12
    6.9    Registered Members....................................................................... 12

EXHIBIT 6

Village Apartments of Charleston, LLC
Operating Agreement

**ARTICLE 7 – LIMITATION OF LIABILITY AND INDEMNIFICATION OF MANAGERS AND MEMBERS**........................................................... 12
7.1    Limitation of Liability................................................................. 12
7.2    Indemnification........................................................................... 13
7.3    Other Rights............................................................................... 13
7.4    Report to Members..................................................................... 13

**ARTICLE 8 – CONTRIBUTION TO CAPITAL AND CAPITAL ACCOUNTS**.......... 13
8.1    Capital Contribution; Loans...................................................... 13
8.2    Capital Accounts........................................................................ 14
8.3    Withdrawal or Reduction of Members' Contributions to Capital................... 14
8.4    Liability of Members.................................................................. 15

**ARTICLE 9 – ALLOCATIONS, DISTRIBUTIONS, ELECTIONS AND REPORTS**. 15
9.1    Allocations.................................................................................. 15
9.2    Distributions............................................................................... 15
9.3    Limitation Upon Distributions................................................... 15
9.4    Allocations for Tax Purposes..................................................... 15
9.5    Tax Status, Elections and Modifications to Allocations................................ 16
9.6    Tax Matters Partner.................................................................... 16
9.7    Records and Reports................................................................... 16
9.8    Books of Account........................................................................ 17
9.9    Company Tax Return and Annual Statement............................. 17
9.10   Bank Accounts............................................................................ 17

**ARTICLE 10 – TRANSFERABILITY OF MEMBERSHIP INTERESTS; ADMISSION OF MEMBERS**................................................................ 17
10.1   Transferability of Membership Interest...................................... 17
10.2   Restrictions on Transfers of Membership Interests.................... 17
10.3   Rights of Transferee................................................................... 19
10.4   Admission of Transferees as Members....................................... 19
10.5   Admission of New Members....................................................... 20

**ARTICLE 11 – DISSOLUTION AND TERMINATION**................................... 20
11.1   Withdrawal................................................................................. 20
11.2   Dissolution................................................................................. 20
11.3   Articles of Dissolution............................................................... 21
11.4   Distribution of Assets Upon Dissolution................................... 21
11.5   Distribution in Kind................................................................... 21

**ARTICLE 12 – BUY-SELL**....................................................................... 21
12.1   Buy-Sell..................................................................................... 21
12.2   Buy-Sell Notice.......................................................................... 22
12.3   Member's Purchase Option........................................................ 22
12.4   Assignment of Purchase Option................................................ 22
12.5   Agreement on Valuations........................................................... 23

EXHIBIT 6

Village Apartments of Charleston, LLC
Operating Agreement

| | | |
|---|---|---|
| 12.6 | Closing.................................................................................................. | 23 |
| 12.7 | Effect on Withdrawing Member's Interest...................................... | 23 |
| 12.8 | Failure to Exercise Purchase Option............................................... | 23 |
| 12.9 | Separation or Divorce of Any Members………………………….... | 24 |

**ARTICLE 13 – MISCELLANEOUS PROVISIONS**...................................... 24

| | | |
|---|---|---|
| 13.1 | Competing Business........................................................................ | 24 |
| 13.2 | Member Representations and Agreements................................... | 24 |
| 13.3 | Notice.......................................................................................... | 25 |
| 13.4 | Creditors Not Benefited.............................................................. | 26 |
| 13.5 | Amendments............................................................................... | 26 |
| 13.6 | Governing Law; Arbitration........................................................ | 26 |
| 13.7 | Entire Agreement........................................................................ | 26 |
| 13.8 | Waiver......................................................................................... | 27 |
| 13.9 | Severability................................................................................. | 27 |
| 13.10 | Binding Agreement...................................................................... | 27 |
| 13.11 | Tense and Gender........................................................................ | 27 |
| 13.12 | Captions...................................................................................... | 27 |
| 13.13 | Benefits of Agreement................................................................ | 27 |
| 13.14 | Counterparts................................................................................ | 27 |

**Attachments:**

| | | |
|---|---|---|
| Schedule 1 - | Names, Initial Capital Contributions and Membership Interests of Members............................................................................ | 29 |
| Schedule 2 - | Managers of the Company......................................................... | 30 |

EXHIBIT 6

# OPERATING AGREEMENT
## OF
## Village Apartments of Charleston, LLC

THIS OPERATING AGREEMENT (this "**Agreement**") of Village Apartments of Charleston, LLC (the "**Company**"), a limited liability company organized pursuant to the Indiana Limited Liability Company Act, is executed effective as of the 5th Day Of March, 2015, by and among the Company and the persons executing this Agreement as the initial Members (as defined below).

## ARTICLE 1- DEFINITIONS

1.1    **Definitions**. The following terms used in this Agreement shall have the following meanings (unless otherwise expressly provided herein):

(a)    "**Act**" means the Indiana Limited Liability Company Act, as the same may be amended from time to time.

(b)    "**Adjusted Capital Account**" means, with respect to a Member, the balance in such Member's Capital Account at the end of the relevant fiscal year, as determined in accordance with Treasury Regulation Section 1.704-1(b)(2)(iv).

(c)    "**Articles of Organization**" means the Articles of Organization of the Company filed with the Secretary of State, as amended or restated from time to time.

(d)    "**Capital Account**" means for each Member the account established pursuant to Section 8.2 hereof and maintained in accordance with the provisions of this Agreement.

(e)    "**Capital Contribution**" means any contribution to the capital of the Company in cash or property by a Member whenever made.

(f)    "**Code**" means the Internal Revenue Code of 1986, as amended from time to time (and any corresponding provisions of succeeding law).

(g)    "**Distributable Cash**" means, with respect to the Company for a period of time, all funds of the Company on hand or in bank accounts of the Company as, in the discretion of the Managers, is available for distribution to the Members after provision has been made for (i) payment of all operating expenses of the Company as of such time, (ii) provision for payment of all outstanding and unpaid current obligations of the Company, including any imposed by this Agreement, as of such time, and (iii) provision for such reserves as the Managers deem necessary or appropriate for Company operations.

EXHIBIT 6

Village Apartments of Charleston, LLC
Operating Agreement

(h)    "**Fiscal Year**" means the calendar year provided that the first Fiscal Year of the Company shall commence on the April 20, 2015, and continue through December 31, 2015.

(i)    "**Income**" means, for each Fiscal Year or other period, each item of income and gain as determined, recognized and classified for federal income tax purposes, provided that any income or gain that is exempt from federal income tax shall be included as if it was an item of taxable income.

(j)    "**Initial Capital Contribution**" means the initial contribution to the capital of the Company made by a Member pursuant to Section 8.1(a) of this Agreement.

(k)    "**Loss**" means, for each Fiscal Year or other period, each item of loss or deduction as determined, recognized and classified for federal income tax purposes, increased by (i) expenditures described in Section 705(a)(2)(B) of the Code, (ii) expenditures contemplated by Section 709 of the Code (except for amounts with respect to which an election is properly made under Section 709(b) of the Code); and (iii) expenditures resulting in a deduction for a loss incurred in connection with the sale or exchange of Company property that is disallowed to the Company under Section 267(a)(1) or Section 707(b).

(l)    "**Majority in Interest**" means, with respect to any referenced group of Members, a combination of any of such Members who, in the aggregate, own more than fifty percent (50%) of the Membership Interests owned by all of such referenced group of Members.

(m)    "**Manager**" means each Member listed on **Schedule II** to this Agreement or any other Person that succeeds such Manager in their capacity as manager or any other Persons elected to act as manager of the Company as provided herein. "**Managers**" refers to such Persons as a group.

(n)    "**Member**" means each Person designated as a member of the Company on **Schedule I** hereto, or any additional member admitted as a member of the Company in accordance with Article 10. "**Members**" refers to such Persons as a group.

(o)    "**Membership Interest**" means all of a Member's rights in the Company, including without limitation, the Member's share of the profits and losses of the Company, the right to receive distributions of the Company's assets, any right to vote and any right to participate in the management of the Company as provided in the Act and this Agreement. As to any Member, Membership Interest shall mean the percentage set forth opposite such Member's name on **Schedule I** hereto.

(p)    "**Net Income**" and "**Net Loss**" means, for each Fiscal Year or other relevant period, (i) the excess of the Income for such period over the Loss for such period, or (ii) the excess of the Loss for such period over the Income for such period, respectively; provided, however, that Net Income and Net Loss for a Fiscal Year or other relevant period shall be computed by excluding from such computation any Income specially allocated under Section 9.1.

EXHIBIT 6

(q) "**Person**" means an individual, a trust, an estate, or a domestic corporation, a foreign corporation, a professional corporation, a partnership, a limited partnership, a limited liability company, a foreign limited liability company, an unincorporated association, or another entity.

(r) "**Secretary of State**" means the Secretary of State of Indiana.

(s) "**Treasury Regulations**" means the Income Tax Regulations and Temporary Regulations promulgated under the Code; as such regulations may be amended from time to time (including corresponding provisions of succeeding regulations).

## ARTICLE 2 - FORMATION OF THE COMPANY

2.1 **Formation**. The Company was formed on the April 20, 2015, upon the filing with the Secretary of State the Articles of Organization of the Company. In consideration of the mutual premises and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree that the rights and obligations of the parties and the administration and termination of the Company shall be governed by this Agreement, the Articles of Organization and the Act.

2.2 **Name**. The business and affairs of the Company shall be conducted under the name Village Apartments of Charleston, LLC. The name of the Company may be changed from time to time by amendment of the Articles of Organization. The Company may transact business under an assumed name by filing an assumed name certificate in the manner prescribed by applicable law.

2.3 **Registered Office and Registered Agent**. The Company's registered office shall be 304 N Main Street, Middlebury, IN 46540 and the name of its initial registered agent shall be Earl Miller at the address listed in this paragraph.

2.4 **Principal Place of Business**. The principal place of business of the Company is PO Box 706, Middlebury, IN 46540, and may be changed to such place or places as the Managers may from time to time deem necessary or advisable.

2.5 **Term**. The Company shall continue in existence perpetually as specified in the Company's Articles of Organization, unless the Company is earlier dissolved and its affairs wound up in accordance with the provisions a£ this Agreement or the Act.

EXHIBIT 6

Village Apartments of Charleston, LLC
Operating Agreement

2.6    **Purposes and Powers**.

(a)    The Company may engage in any lawful business for which limited liability companies may be organized under the Act unless the Articles of Organization are amended to provide a more limited purpose.

(b)    The Company shall have any and all powers which are necessary or desirable to carry out the purposes and business of the Company to the extent the same may be legally exercised by limited liability companies under the Act. The Company shall carry out the foregoing activities pursuant to the arrangements set forth in the Articles of Organization and this Agreement.

2.7    **Nature of Members' Interests**. The interests of the Members in the Company shall constitute personal property for all purposes. Legal title to all Company assets shall be held in the name of the Company. Neither any Member nor a successor, representative or assign of such Member, shall have any right, title or interest in or to any Company property or the right to partition any real property owned by the Company. Interests may be evidenced by a certificate of membership interest issued by the Company, in such form as the Managers may determine.

## ARTICLE 3 - RIGHT AND DUTIES OF MANAGERS

3.1    **Management**. The business and affairs of the Company shall be managed by the Managers. In addition to the powers and authorities expressly conferred upon the Manager by this Agreement, the Manager shall have full and complete authority, power and discretion to manage and control the business of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary to or incident to the management of the Company's business, except only as to those acts and things as to which approval by the Members is expressly required by the Articles of Organization, this Agreement, the Act or other applicable law. At any time when there is more than one Manager may take any action permitted to be taken by the Managers, unless the approval of more than one of the Managers is expressly required pursuant to this Agreement or the Act.

3.2    **Number and Qualifications.** The names and addresses of the Managers are set forth in **Schedule II** attached hereto and made a part hereof. The number of Managers of the Company may be fixed from time to time by the affirmative vote of a Majority in Interest of all of the Members. Managers need not be residents of the State of Indiana or Members of the Company.

3.3    **Election and Term of Office**. Managers shall be elected at the annual meeting of the Members (except as provided in Sections 3.5 and 3.6). Each Manager shall hold office until the Member's successor shall have been elected and qualified, or until the death or dissolution of such Member, or until his or its resignation or removal from office in the manner provided in this Agreement or in the Act.

EXHIBIT 6

Village Apartments of Charleston, LLC
Operating Agreement

3.4 **Resignation**. Any Manager of the Company may resign at any time by giving written notice to all of the Members of the Company. The resignation of any Manager shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

3.5 **Removal**. At any special meeting of the Members called expressly for that purpose, all or any lesser number of Managers may be removed at any time, either with or without cause, by the affirmative vote of a Majority in Interest of all the Members then entitled to vote at any election of Managers. In case any vacancy so created shall not be filled by the Members at such meeting, such vacancy may be filled by the Managers as provided in Section 3.6. Notwithstanding anything to the contrary in this Agreement, so long as the Loan is outstanding, Earl Miller shall remain the Manager of the Company. For the purposes of this paragraph the "Loan" shall refer to the loan to the Company originated by Arbor Commercial Mortgage, LLC for the purchase of the real property commonly known as Village Apartments, 325 Gulledge Street, Charleston, SC.

3.6 **Vacancies**. Any Manager vacancy occurring for any reason may be filled by the affirmative vote of the Members owning a Majority in Interest.

3.7 **Inspection of Books and Records**. Any Manager shall have the right to examine all books and records of the Company for a purpose reasonably related to such Manager's position as a Manager.

3.8 **Compensation**. Managers may be compensated for their service as Managers. The Company shall reimburse Managers for all reasonable, documented out-of-pocket expenses incurred in connection with their duties as Managers.

3.9 **Committees of the Managers**. The Managers, by resolution, may designate from among the Managers one or more committees, each of which shall be comprised of one or more of the Managers. Any such committee to the extent provided in such resolution or in this Agreement, shall have and may exercise all of the authority of the Managers, subject to any restrictions contained in this Agreement or the Act.

3.10 **Approval Required for Certain Transactions**. The Managers shall not have the authority to sell, mortgage, assign, pledge or otherwise encumber any of the Company's assets without the consent of the majority of Managers.

## ARTICLE 4 - MEETINGS OF MANAGERS

4.1 **Place of Meeting**. The Managers of the Company may hold their meetings, both regular and special, at any place within or without the State of Indiana.

4.2 **Notice of Meetings**. The first meeting of newly elected Managers shall be held immediately following the adjournment of the annual meeting of the Members. The Managers may otherwise meet at such intervals and at such time and place as they shall schedule. The

EXHIBIT 6

Village Apartments of Charleston, LLC
Operating Agreement

first meeting of Managers, and any scheduled meetings of the Managers, may be held without notice. Special meetings of the Managers may be called at any time by any serving Manager for any purpose or purposes. Notice of such special meetings, unless waived by attendance or by written consent to the holding of the special meeting, shall be given at least Five (5) days before the date of such meeting to all Managers not calling the meeting. Notice of such special meeting shall state that it shall be held at the principal place of business of the Company, the date and hour of the special meeting, and its purpose or purposes. Absent the written consent of all Managers to take other action, the business transacted at such special meeting shall be limited to such purpose or purposes as stated in the notice.

4.3    **Action by Managers; Quorum; Voting; Action Without a Meeting**.

(a)    Managers may participate in any meeting of the Managers by means of conference telephone or similar communications equipment, provided all persons participating in the meeting can hear one another, and such participation in a meeting shall constitute presence in person at the meeting.

(b)    All votes required of Managers hereunder may be by voice vote unless a written ballot is requested, which request may be made by any one Manager.

(c)    Any action which under any provision of the Act or this Agreement is to be taken at a meeting of the Managers may be taken without a meeting by written consent signed by Managers who would be entitled to vote upon such action at a meeting. Such written consent must be kept with the records of the Company.

4.4    **Adjournment**. Any Manager present at a meeting may adjourn any Managers' meeting until another stated day and hour or until the time fixed for the next regular meeting of the Managers.

## ARTICLE 5 – MEMBERS

5.1    **Names and Addresses of Members**. The names, addresses and Membership Interests of the Members are as reflected in **Schedule I** attached hereto and made a part hereof, which Schedule shall be as amended by the Company as of the effectiveness of any transfer or subsequent issuance of any Membership Interest.

5.2    **Admission of Members**.

(a)    In the case of a Person acquiring a Membership Interest directly from the Company, the Person shall become a Member with respect to such Membership Interest on compliance with the requirements of Article 10.

(b)    An assignee of a Membership Interest shall become a Member on compliance with the requirements of Article 10.

EXHIBIT 6

(c)    Any Person may become a Member unless such Person lacks capacity or is otherwise prohibited from being admitted by applicable law.

## ARTICLE 6 - MEETINGS OF MEMBERS

6.1    **Annual Meetings of Members**. The members may hold an annual meeting but are not required to do so.

6.2    **Special Meetings of Members**. Special meetings of the Members may be called by the Managers or by the holders of Ten percent (10%) or more of all of the Membership Interests. Business transacted at all special meetings shall be confined to the purpose or purposes stated in the notice.

6.3    **Notice of Meetings of Members**. Written notice stating the place, day and hour of the meeting and, additionally in the case of special meetings, stating the principal place of business of the Company as the location and the purpose or purposes for which the meeting is called, shall be delivered not less than Ten (10) nor more than Sixty (60) days before the date of the meeting, to each Member of record entitled to vote at such meeting.

6.4    **Record Date**. For the purpose of determining Members entitled to notice of or to vote at any meeting of Members, or Members entitled to receive payment of any distribution, or to make a determination of Members for any other purpose, the date on which notice of the meeting is mailed or the date on which such distribution is declared, as the case may be, shall be the record date for such determination of Members. When a determination of Members entitled to vote at any meeting of Members has been made as provided in this Section, such determination shall apply to any adjournment thereof.

6.5    **Quorum**. A Majority in Interest of the Members shall constitute a quorum at all meetings of the Members, except as otherwise provided by law or this Agreement. Once a quorum is present at the meeting of the Members, the subsequent withdrawal from the meeting of any Member prior to adjournment or the refusal of any Member to vote shall not affect the presence of a quorum at the meeting. If, however, such quorum shall not be present at the opening of any meeting of the Members, the Members entitled to vote at such meeting shall have the power to adjourn the meeting from time to time, without notice other than announcement at the meeting, until the holders of the requisite amount of Membership Interests shall be present or represented.

6.6    **Actions by Members Other than for Election of Managers**. Except for a matter for which the affirmative vote of the holders of a greater portion of the Membership interest entitled to vote is required by law, the Articles of Organization or this Agreement, the act of Members shall be the affirmative vote of a Majority in Interest of all the Members represented and voting at the meeting. All actions of the Members provided for herein may be taken by written consent without a meeting. Any such action which may be taken by the Members without a meeting shall be effective only if the consents are in writing, set forth the action so taken, and are signed by all Members eligible to vote on such action. Members may participate in any meeting of the Members by means of telephone conference or similar communications

EXHIBIT 6

Village Apartments of Charleston, LLC
Operating Agreement

equipment, provided all persons participating in the meeting can hear one another, and such participation in a meeting shall constitute presence in person at the meeting.

6.7    **Action by Members to Elect Managers**. For purposes of voting on the election of Managers, Managers shall be elected at any meeting of the Members at which a quorum is present by a plurality of the Membership Interest represented and voting at the meeting.

6.8    **List of Members Entitled to Vote**. The Managers shall make, at least Ten (10) days before each meeting of Members, a complete list of the Members entitled to vote at such meeting, or any adjournment of such meeting, which list, for a period of Ten (10) days prior to such meeting, shall be kept on file at the registered office of the Company and shall be subject to inspection by any Member at any time during usual business hours. Such list shall also be produced and kept open at the time and place of the meeting and shall be subject to inspection of any Member during the whole time of the meeting. However, failure to comply with the requirements of this Section shall not affect the validity of any action taken at such meeting.

6.9    **Registered Members**. The Company shall be entitled to treat the holder of record of any Membership Interest as the holder in fact of such Membership interest for all purposes, and accordingly shall not be bound to recognize any equitable or other claim to or interest in such Membership Interest on the part of any other person, whether or not it shall have express or other notice of such claim or interest, except as expressly provided by this Agreement or the laws of Indiana.

## ARTICLE 7 - LIMITATION OF LIABILITY AND INDEMNIFICATION OF MANAGERS AND MEMBERS

7.1    **Limitation of Liability**. No Manager or Member of the Company shall be liable to the Company or its Members for monetary damages for an act or omission in such person's capacity as a Manager or a Member, except as provided in the Act for (i) acts or omissions which a Manager knew at the time of the acts or omissions were clearly in conflict with the interests of the Company, (ii) any transaction from which a Manager derived an improper personal benefit, or (iii) acts or omissions occurring prior to the date this provision becomes effective. If the Act is amended to authorize action further eliminating or limiting the liability of Managers and Members, then the liability of a Manager or Member of the Company shall be eliminated or limited to the fullest extent permitted by the Act as so amended. Any repeal or modification of this section shall not adversely affect the right or protection of a Manager or Member existing at the time of such repeal or modification.

7.2    **Indemnification**. The Company shall indemnify the Managers and Members to the fullest extent permitted or required by the Act, as amended from time to time, and the Company may advance expenses incurred by the Manager or Member upon the approval of the Managers and the receipt by the Company of an undertaking by such Manager or Member to reimburse the Company unless it shall ultimately be determined that such Manager or Member is entitled to be indemnified by the Company against such expenses. The Company may also indemnify its employees and other representatives or agents up to the fullest extent permitted

EXHIBIT 6

Village Apartments of Charleston, LLC
Operating Agreement

under the Act or other applicable law, provided that the indemnification in each such situation is first approved by Members owning a Majority in Interest.

7.3    **Other Rights**. The indemnification provided by this Agreement shall: (i) be deemed exclusive of any other rights to which a person seeking indemnification may be entitled under any statute, agreement, vote of Members or disinterested Managers, or otherwise, both as to action in official capacities and as to action in another capacity while holding such office; (ii) continue as to a person who ceases to be a Manager or Member; (iii) inure to the benefit of the estate, heirs, executors, administrators or other successors of an indemnitee and (iv) not be deemed to create any rights for the benefit of any other person or entity.

7.4    **Report to Members**. The details concerning any action to limit the liability, indemnify or advance expenses to a Manager, Member or other, taken by the Company shall be reported in writing to the Members with or before the notice or waiver of notice of the next Members' meeting or with or before the next submission to Members of a consent to action without a meeting or, if sooner, separately within Ninety (90) days immediately following the date of the action.

## ARTICLE 8 - CONTRIBUTIONS TO CAPITAL AND CAPITAL ACCOUNTS; LOANS

8.1    **Capital Contribution; Loans**.

(a)    Upon execution of this Agreement, each Member agrees to contribute cash/property to the Company in the amount set forth as the Initial Capital Contribution of such Member on **Schedule I** attached hereto.

(b)    If the Managers determine that the Initial Capital Contributions are insufficient to carry out the purposes of the Company, the Managers may request that the Members vote on making additional contributions to the capital of the Company. If a Majority of Interest of the Members approve such request, then each of the Members shall be obligated to make such additional contributions (each an "**Additional Capital Contribution**") to the Company ratably in accordance with such Members' then existing Membership Interest within the time period approved by all of the Members.

8.2    **Capital Accounts**.

(a)    The Company shall maintain a separate Capital Account for each Member pursuant to the principles of this Section 8.2 and Treasury Regulation Section 1.7041(b)(2)(iv). The initial Capital Account of each Member shall be the Initial Capital Contribution of such Member. Such Capital Account shall be: (i) increased by (a) the amount of the subsequent Capital Contributions of such Member to the Company under Section 8.1 and (b) such Member's allocable share of Company Income and Net Income pursuant to Section 9.1; and (ii) decreased by (a) the amount of cash distributed to the Member by the Company pursuant to Section 9.2 and (b) such Member's allocable share of Loss and Net Loss pursuant to Section 9.1.

EXHIBIT 6

(b)     The provisions of this Section 8.2 and other portions of this Agreement relating to the proper maintenance of Capital Account are designed to comply with the requirements of Treasury Regulation Section 1.704-(b). The Members intend that such provisions be interpreted and applied in a manner consistent with such Treasury Regulations. The Managers are authorized to modify the manner in which the Capital Accounts are maintained if the Managers determine that such modification (i) is required or prudent to comply with the Treasury Regulations and (ii) is not likely to have a material effect on the amounts distributable to any Member upon the dissolution of the Company.

8.3     **Withdrawal or Reduction of Members' Contributions to Capital**.

(a)     No Member shall have the right to withdraw all or any part of its Capital Contribution or to receive any return on any portion of its Capital Contribution, except as may be otherwise specifically provided in this Agreement. Under circumstances involving a return of any Capital Contribution, no Member shall have the right to receive property other than cash.

(b)     No Member shall have priority over any other Member, either as to the return of Capital Contributions or as to Net Income, Net Losses or distributions; provided that this subsection shall not apply to loans (as distinguished from Capital Contributions) which a Member has made to the Company.

8.4     **Liability of Members**. No Member shall be liable for the debts, liabilities or obligations of the Company beyond his or its respective Initial Capital Contribution and any Additional Capital Contribution required of such Member pursuant to Section 8.1(b) above. Except as otherwise expressly provided herein, no Member shall be required to contribute to the capital of, or to loan any funds to, the Company.

## ARTICLE 9 - ALLOCATIONS, DISTRIBUTIONS, ELECTIONS AND REPORTS

9.1     **Allocations**. Subject to the provisos below, for purposes of maintaining Capital Accounts and in determining the rights of the Members among themselves, Net Income, or Net Loss, if any, for a Fiscal Year or other period, shall be allocated to the Members in proportion to their respective Membership Interests after giving effect to all Capital Account adjustments attributable to contributions and distributions of cash and property made during such Fiscal Year; provided, however, notwithstanding the provisions of the preceding clause of this Section 9.1, in the event any Member unexpectedly receives any adjustments, allocations, or distributions described in Treasury Regulation Sections 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5), or 1.704-1(b)(2)(ii)(d)(6) items of Income shall be specially allocated to such Member (consisting of a pro rata portion of each item of Company Income, including gross income, for such year) in an amount and manner sufficient to eliminate such deficit, if any, in such Member's Adjusted Capital Account, as quickly as possible. The foregoing provision is intended to constitute a "qualified income offset" within the meaning of Section 1.704-1(b)(2)(ii)(d) of the Treasury Regulations and this provision shall be interpreted consistently with such Treasury Regulation.

EXHIBIT 6

Village Apartments of Charleston, LLC
Operating Agreement

9.2    **Distributions**. The Managers shall distribute Distributable Cash and other property at such times and in such amounts as they may determine, in their sole discretion. All distributions of Distributable Cash or other property shall be made to the Members in accordance with the contents of the Operating Agreement and then in proportion to their respective Membership Interests. Except as provided in Section 9.3, all distributions of Distributable Cash and other property shall be made at such time and in such amounts as the majority of Managers may determine, in their sole discretion. At least Seventy Five percent (75%) of net income shall be distributed annually to members unless the Managers unanimously give consent otherwise.

9.3    **Limitation Upon Distributions**. No distribution shall be declared and paid if payment of such distribution would cause the Company to violate any limitation on distributions provided in the Act.

9.4    **Allocations for Tax Purposes**. Except as otherwise provided herein, each item of Income, Net Income, Loss or Net Loss of the Company shall be allocated to the Members in the same manner as such allocations are made for book purposes pursuant to Section 9.1. In the event of a transfer of, or other change in, an interest in the Company during a Fiscal Year, each item of taxable income and loss shall be prorated in accordance with Section 706 of the Code, using any convention permitted by law and selected by the Managers.

9.5    **Tax Status, Elections and Modifications to Allocations**.

(a)    Notwithstanding any provision contained in this Agreement to the contrary, solely for federal income tax purposes, each of the Members hereby recognize that the Company will be subject to all provisions of Subchapter K of the Code; provided however, that the filing of all required returns thereunder shall not be construed to extend the purposes of the Company or expand the obligations or liabilities of the Members.

(b)    The Managers, in their sole discretion, may cause the Company to elect pursuant to Section 754 of the Code and the Treasury Regulations to adjust the basis of the Company assets as provided by Section 743 or 734 of the Code and the Treasury Regulations thereunder. The Company shall make such elections for federal income tax purposes as may be determined by the Managers.

(c)    The Managers shall prepare and execute any amendments to this Agreement necessary for the Company to comply with the provisions of Treasury Regulations Sections 1.704-1(b), 1.704-1(c) and 1.704-2 upon the happening of any of the following events: (i) incurring any liability which constitutes a "nonrecourse liability" as defined in Treasury Regulation Section 1.704-2(b)(3) or a "partner nonrecourse debt" as defined in Treasury Regulations Section 1.704-2(b)(4); (ii) a constructive termination of the Company pursuant to Code Section 708(b)(1)(B); or (iii) the contribution or distribution of any property, other than cash, to or by the Company.

9.6    **Tax Matters Partner**. The Managers shall designate a Member serving as a Manager, or if there is none or if none are eligible to act, any Member, as the "tax matters

EXHIBIT 6

partner" for federal income tax purposes. The tax matters partner is authorized and required to represent the Company in connection with all examinations of the Company's affairs by tax authorities, including resulting administrative and judicial proceedings, and to expend Company funds for professional services and costs associated therewith. The tax matters partner shall have the final decision making authority with respect to all federal income tax matters involving the Company. The Members agree to cooperate with the tax matters partner and to do or refrain from doing any or all things reasonably required by the tax matters partner to conduct such proceedings. Any direct out-of-pocket expense incurred by the tax matters partner in carrying out his obligations hereunder shall be allocated to and charged to the Company as an expense of the Company for which the tax matters partner shall be reimbursed.

9.7    **Records and Reports**. At the expense of the Company, the Managers shall maintain records and accounts of all operations and expenditures of the Company. The Company shall keep at its principal place of business the records required by the Act to be maintained there.

9.8    **Books of Account.**

(a)    The Company shall maintain the Company's books and records and shall determine all items of Income, Loss, Net Income and Net Loss in accordance with the method of accounting selected by the Managers, consistently applied. All of the records and books of account of the Company, in whatever form maintained, shall at all times be maintained at the principal office of the Company and shall be open to the inspection and examination of the Members or their representatives during reasonable business hours. Such right may be exercised through any agent or employee of a Member designated by it or by an attorney or independent certified public accountant designated by such Member. Such Member shall bear all expenses incurred in any action taken on behalf of such Member.

(b)    All expenses in connection with the keeping of the books and records of the Company and the preparation of audited or unaudited financial statements required to implement the provisions of this Agreement or otherwise needed for the conduct of the Company's business shall be borne by the Company as an ordinary expense of its business.

9.9    **Company Tax Return and Annual Statement**. The Managers shall cause the Company to file a federal income tax return and all other tax return required to be filed by the Company for each Fiscal Year or part thereof, and shall provide to each person who at any time during the Fiscal Year was a Member with an annual statement (including a copy of Schedule K-1 to Internal Revenue Service Farm 1065) indicating such Member's share of the Company's income, loss, gain, expense and other items relevant for federal income tax purposes.

9.10    **Bank Accounts**. The bank account or accounts of the Company shall be maintained in the bank approved by the Managers. The terms governing such accounts shall be determined by the Managers and withdrawals from such bank accounts shall only be made by such parties as may be approved by the Managers.

## ARTICLE 10 - TRANSFERABILITY OF MEMBERSHIP INTERESTS;

EXHIBIT 6

Village Apartments of Charleston, LLC
Operating Agreement

## ADMISSION OF MEMBERS

10.1    **Transferability of Membership Interest**. The term "**transfer**" when used in this Agreement with respect to a Membership Interest includes a sale, assignment, gift, pledge, exchange or other disposition. A Member shall not at any time transfer its Membership Interest except in accordance with the conditions and limitations set out in Section 10.2. Any transferee of a Membership Interest by any means shall have only the rights, powers and privileges set out in Section 10.3 or otherwise provided by law and shall not become a Member of the Company except as provided in Section 10.4.

10.2    **Restrictions on Transfers of Membership Interests**.

(a)    No Member or involuntary transferee shall dispose of or transfer any Membership Interest in the Company which he now owns or may hereafter acquire except as set forth in this paragraph. Any purported transfer or disposition of Membership Interest in violation of the terms of this paragraph shall be void and the Company shall not recognize or give any effect to such transaction.

(b)    A Member shall be free to transfer, during his lifetime or by testamentary transfer, any or all of his Membership Interest in the Company to his spouse, any of his children, grandchildren or direct lineal descendants, whether by blood or by adoption, spouses of such issue or a trust for the sole benefit of those persons or any of them; but, in case of any such transfer, the transferee shall be bound by all the provisions of this Agreement and no further transfer of such Membership Interest shall be made by such transferee except back to the Member who originally owned it or except in accordance with the provisions of this paragraph.

(c)    Any Member, or transferee of such Member, who wishes to transfer all or any part of his Membership Interest in the Company (hereinafter "**offeror**"), other than as permitted in subparagraph (b) above, first shall submit a written offer to sell such Membership Interest to the Company at the same price and upon the same terms and conditions offered by a bona fide prospective purchaser of such Membership Interest. Such written offer to the Company shall continue to be a binding offer to sell until: (1) expressly rejected by a Member of the Company acting pursuant to resolution formally adopted by a majority of the outstanding Membership Interests (excluding Membership Interest held by the offeror); or (2) the expiration of a period of Thirty (30) days after delivery of such written offer to the Company, whichever shall first occur.

(d)    Upon termination, of the offer referred to in subparagraph (c) above, the offeror shall then submit to each of the other Members written offers to sell (hereinafter "**offeree**"), at the same price and upon the same terms and conditions previously offered to the Company, any of the Membership Interest not previously purchased by the Company under the aforesaid offer to it, such Membership Interest to be allocated among the offerees on the basis of the percentage of Membership Interest then held by them. Each such offer shall continue to be a binding offer to sell until expressly accepted or rejected by the offeree or until the expiration of Twenty (20) days after its delivery to the offeree whichever shall first occur. If any such offeree does not elect to purchase all the Membership Interest offered to him, any

EXHIBIT 6

Village Apartments of Charleston, LLC
Operating Agreement

other offeree may purchase all or any part of the unpurchased Membership Interest by giving to the offeror written notice of his election so to purchase not later than Five (5) days after the termination of the original offer to the offeree who did not elect to purchase all such Membership Interest If more than one offeree exercises this election to purchase unpurchased Membership Interest, such Membership Interest shall be divided between or among such offerees in proportion to their then respective holdings of Membership Interest. Unless all of the Membership Interest offered is purchased by the Company and the other Members, then all acceptances to purchase less than all of such Membership Interest shall be deemed null and void.

(e)    Every written offer submitted in accordance with the provisions of this paragraph shall specifically name the person to whom the offeror intends to transfer the Membership Interest, the amount of Membership Interest which he intends so to transfer to each person and the price and other terms upon which each intended transfer is to be made. Upon the termination of all such written offers and the five-day period provided for in subparagraph (d) above, the offeror shall be free to transfer, for a period of Three (3) months thereafter, any unpurchased Membership Interest to the persons so named at the price and upon the other terms and conditions so named, provided that any such transferee of that Membership Interest shall thereafter be bound by all the provisions of this Agreement

(f)    Every written offer submitted to the Company shall be deemed to have been delivered when delivered in person to each Member of the Company or if and when sent by prepaid registered or certified mail, to all of the Members at their last known business addresses. Every written offer submitted to an offeree shall be deemed to have been delivered if and when delivered in person to such offeree or if and when sent by prepaid registered or certified mail, to such offeree at his address as it then appears on the records of the Company, or, if no address appears on said records, to his last known residence address.

(g)    If any consideration to be received by the offeror for the Membership Interest offered is property other than cash, then the price of the Membership Interest shall be measured to the extent of the fair market value of such noncash consideration.

(h)    The provisions contained herein shall not apply to the pledge of any Membership Interest in the Company as collateral for a loan but shall apply to the sale or other disposition of Membership Interest under any such pledge.

(i)    Every certificate representing Membership Interest in the Company shall bear the following legend prominently displayed:

"The Membership Interest represented by this certificate, and the transfer thereof, are subject to the provisions of the Operating Agreement of the Company, a copy of which is on file in, and may be examined at, the principal office of the Company."

10.3    **Rights of Transferee**. Unless and until admitted as a Member of the Company in accordance with Section 10.4, the transferee of a Membership Interest shall not be entitled

EXHIBIT 6

Village Apartments of Charleston, LLC
Operating Agreement

to any of the rights, powers, or privileges of a Member, except that the transferee shall be entitled to receive the distributions and allocations to which the Member would be entitled but for the transfer of his Membership Interest.

10.4    **Admission of Transferees as Members**. A transferee of a Membership Interest maybe admitted as a Member of the Company upon furnishing to the Company all of the following:

(a)    The written consent of all the Members;

(b)    Execution of an agreement, a form satisfactory to all of the Managers, to be bound by all the terms and conditions of this Agreement; and

(c)    Payment of such reasonable expenses as the Company may incur in connection with his admission as a Member.

10.5    **Admission of New Members**. New Members to the Company may only be admitted after compliance with Section 10.4 and upon receipt by the Company of an opinion of counsel, satisfactory in form and substance to all of the Managers, that neither the offering nor the proposed sale of the Membership Interest will violate any federal or applicable state securities law and that neither such offering or sale will adversely affect the company from being taxed as a partnership for federal income tax purposes.

## ARTICLE 11- DISSOLUTION AND TERMINATION

11.1    **Withdrawal**. Except as otherwise provided in this Agreement, no Member shall at any time retire or withdraw from the Company or withdraw any amount out of his Capital Account. Any Member retiring or withdrawing in contravention of this Section 11.1 shall indemnify, defend and hold harmless the Company and all other Members (other, than a Member who is, at the time of such withdrawal, in default under this Agreement) from and against any losses, expenses, judgments, fines, settlements or damages suffered or incurred by the Company or any such other Member arising out of or resulting from such retirement or withdrawal.

11.2    **Dissolution.**

(a)    The Company shall be dissolved upon the first of the following to occur:

(i)    Upon the election to dissolve the Company by all of the Members;

(ii)    Upon the happening of any event of withdrawal (as defined in the Act) with respect to any Member, unless there is at least one remaining Member and the business of the Company is continued by the written consent of all of the remaining Managers or the written consent of the remaining Members holding a Majority in

EXHIBIT 6

Village Apartments of Charleston, LLC
Operating Agreement

Interest within Ninety (90) days of the action by or affecting the withdrawing Member; or

(iii)    The entry of a decree of judicial dissolution or the issuance of a certificate for administrative dissolution under the Act.

(b)    Upon dissolution of the Company, the business and affairs of the Company shall terminate and be wound up, and the assets of the Company shall be liquidated pursuant to this Article 11.

(c)    Dissolution of the Company shall be effective as of the day on which the event occurs giving rise to the dissolution, but the Company shall not terminate until there has been a winding up of the Company's business and affairs, and the assets of the Company have been distributed as provided in Section 11.4.

(d)    Upon dissolution of the Company, the Managers may cause any part or any of the assets of the Company to be sold in such manner as the Managers shall determine in an effort to obtain the best prices for such assets; provided, however, that the Managers may distribute assets of the Company in kind to the Members to the extent practicable.

11.3    **Articles of Dissolution**. Upon the dissolution and commencement of the winding up of the Company, the Managers shall cause Articles of Dissolution to be executed on behalf of the Company and filed with the Secretary of State, and a Manager or authorized Member shall execute, acknowledge and file any and all other instruments necessary or appropriate to reflect the dissolution of the Company.

11.4    **Distribution of Assets Upon Dissolution**. In settling accounts after dissolution, the assets of the Company shall be paid in the following order:

(a)    First, to creditors (including any loans from Members), in the order of priority as provided by law;

(b)    Second, to the Members in accordance with any specific distributions declared in this document which have not been satisfied in full;

(c)    Third, to the Members pro-rata in proportion to their Capital Amount balances;

(d)    Fourth, to the Members pro rata in proportion to their respective Membership Interests.

11.5    **Distribution in Kind**. If any assets of the Company are distributed in kind, such assets shall be distributed to the Members entitled thereto as tenants-in-common in the same proportions as the Members would have been entitled to cash distributions if such property had been sold for cash and the net proceeds thereof distributed to the Members. In the event that

EXHIBIT 6

Village  Apartments  of Charleston, LLC
Operating Agreement

distributions in kind are made to the Members upon dissolution and liquidation of the Company, the Capital Account balances of such Members shall be adjusted to reflect the Members' allocable share of gain or loss which would have resulted if the distributed property had been sold at its fair market value.

## ARTICLE  12 - BUY-SELL

12.1  **Buy-Sell**. The Company shall have the right to purchase the Membership Interest of a Member pursuant to the terms of this Article 12. Death or incompetency of any Member does not constitute a Buy-Sell Event. Each of the following events shall constitute a "Buy-Sell Event" under this Agreement:

    (a)    A judicial determination of the insolvency of the Member;

    (b)    Any filing of a petition or suit under the bankruptcy laws by or against the Member that is not dismissed within Sixty (60) days.

    (b)    Any purported voluntary or involuntary transfer or encumbrance of all or any part of the Member's Membership Interest in a manner not expressly permitted by this Agreement;

    (d)    Any material breach of this Agreement by the Member which is not cured within Ten (10) days after written notice of such breach is given, to the Member by the Company; or

    (e)    Any instance in which the spouse of the Member commences against the Member, or the Member is named in, a domestic proceeding. This shall not apply if the spouse is also a Member.

12.2  **Buy-Sell Notice**. Upon the occurrence of a Buy-Sell Event, the Member with respect to which the Buy-Sell Event occurs (the "**Withdrawing Member**"), or his executor, administrator or other legal representative, shall give notice of the Buy-Sell Event (the "**Buy Sell-Notice**") to the other Members within Ten (10) days after its occurrence. If the Withdrawing Member fails to give the Buy-Sell Notice, any other Member (other than a Withdrawing Member) may give the notice at any time thereafter and by so doing commence the buy-sell procedure provided, for in this Article 12. In the case of a domestic proceeding, the other Members' actual knowledge of the commencement of a domestic proceeding shall be treated as receipt of a Buy-Sell Notice.

12.3  **Member's Purchase Option**. Upon the occurrence of a Buy-Sell Event, each of the Members, except the Withdrawing Member, shall have an option to purchase (the "**Purchase Option**") the Withdrawing Member's Membership Interest at Closing on the terms and conditions set forth in this Article 12. This right will be allocated among the Members who elect to purchase (the "**Purchasing Members**") in the proportion they mutually agree upon, or, in the absence of agreement, in the ratio that each of the Purchasing Member's Membership Interest bears to the aggregate Membership Interests of all Purchasing Members. The Purchasing

EXHIBIT 6

Village Apartments of Charleston, LLC
Operating Agreement

Members must give notice of their election to *exercise* their Purchase Option to the Withdrawing Member and all other Members within Thirty (30) days following delivery of the Buy-Sell Notice.

      12.4    **Assignment of Purchase Option**. If at the occurrence of a Buy-Sell Event, there exist only Two (2) then-current Members (including the Withdrawing Member), the Member that is not withdrawing shall have the option during the Thirty (30) day period set forth in Section 12.3 to assign its Purchase Option to any Person other than the Withdrawing Member (the "**Purchase Option Assignee**") by notifying the Withdrawing Member and the Company of such assignment in writing. After delivery of such notice, the Purchase Option Assignee shall have the option to purchase the Withdrawing Member's Membership Interest on the same terms and conditions as would apply to the Member from which the Purchase Option was assigned. Notwithstanding any other provision of this Article 12, any Purchase Option Assignee which exercises its Purchase Option, as provided herein, shall not be admitted as a substitute Member without full compliance with Article 10. In the event the Purchase Option Assignee does not exercise the Purchase Option, the Purchase Option Assignee shall have no further rights under this Agreement.

      12.5    **Agreement on Valuations**. Unless otherwise agreed in writing by the purchaser(s) and the Withdrawing Member within Sixty (60) days of the receipt of a Buy-Sell Notice, the purchase price for the Withdrawing Member's Membership Interest shall equal the fair market value of the Withdrawing Member's Membership Interest as determined in good faith by the Company's accountants. The purchase price to be paid for the Withdrawing Member's Membership Interest will be reduced by the amount of any distributions made by the Company to the Withdrawing Member from the date the Buy-Sell Event occurred with respect to the Withdrawing Member to the Closing.

      12.6    **Closing**. The closing (the "**Closing**") of the purchase of any Membership Interest pursuant to this Article 12 shall take place on the date agreed upon by the purchaser(s) and Withdrawing Member, but not later than Ninety (90) days after the occurrence of the respective Buy-Sell Event. If the Purchase Price is $50,000 or less, it shall be paid in cash at the Closing. If the Purchase Price is in excess of $50,000, the purchaser(s) may elect to pay the amounts in excess of $50,000 by issuance of a promissory note which bears interest at Eight percent (8%) and is payable over a period of not more than One (1) year. On payment of purchase price, the Withdrawing Member shall execute and deliver such assignments and other instruments as may be reasonably necessary to evidence and carry out the transfer of such Membership Interest to the purchaser(s).

      12.7    **Effect on Withdrawing Member's Interest**. From the date of the occurrence of the Buy-Sell Event to the date of the transfer of the Withdrawing Member's Membership Interest under this Article 12, the ownership interest represented by the Withdrawing Member's Membership Interest will be excluded from any calculation of aggregate Membership Interests for purposes of any approval required of Members under this Agreement. Without limiting the generality of any other provision of this Agreement, upon the exercise of the Purchase Option, the Withdrawing Member, without further action, will have

EXHIBIT 6

Village Apartments of Charleston, LLC
Operating Agreement

no rights in the Company or against the Company or any Member other than the right to receive payment for its Membership Interest in accordance with this Article 12.

12.8    **Failure to Exercise Purchase Option**. In the event the Members or Purchase Option Assignee, if any, do not exercise their Purchase Options, the Withdrawing Member or its executor, administrator or other legal representative in the event of death, permanent disability or declaration of legal incompetency, may transfer its economic rights in the Membership Interest of the Withdrawing Member to any Person, provided, however that any transferee of the Withdrawing Member's Membership Interest as provided herein, (i) shall only have those rights as specified in Section 10.3, (ii) shall not be admitted as a substitute Member without fall compliance with Section 10.4 and (iii) shall be subject to the Buy-Sell restrictions imposed under this Article 12. In the event the Purchase Option is not exercised, the Company shall not pay the Members or any employee unreasonable compensation in order to reduce the profits available for distribution to the holder of the Withdrawing Member's Membership Interest.

12.9    **Separation or Divorce of Married Members.**  In the event that married Members separate or divorce, they may continue as Members of the LLC by mutual agreement. If the separating or divorcing Members are the only Members of the LLC and they do not agree to both continue as Members and they cannot agree who will continue as a Member of the LLC, then each Member, after reviewing the valuation prepared pursuant to Article 12.5, will submit a purchase bid to the Registered Agent within Seven (7) days of the date the valuation is prepared. The Registered Agent will open the bids on the eighth (8th ) day and advise the Members as to who is the highest bidder. The highest bidder shall have the opportunity to purchase the other Member's interest as set forth in Article 12.

## ARTICLE 13 - MISCELLANEOUS PROVISIONS

13.1    **Competing Business**. Except as otherwise expressly provided in this Agreement or the Act, neither the Managers nor the Members, nor any of their shareholders, directors, officers, employees, partners, agents, family members or affiliates, shall be prohibited or restricted in any way from investing in or conducting, either directly or indirectly, and may invest in and/or conduct, either directly or indirectly, businesses of any nature whatsoever, including the ownership and operation of businesses or properties similar to or in the same geographical area as those held by the Company. Except as otherwise provided in this Agreement or the Act, any investment in or conduct of any such businesses by any such person or entity shaft not give rise to any claim for an accounting by any Member or the Company or any right to claim any interest therein or the profits therefrom.

13.2    **Member Representations and Agreements**.     Except as otherwise provided in this Agreement or the Act, the Managers and Members agree to and acknowledge the following:

(a)    INTENTIONALLY LEFT BLANK.

EXHIBIT 6

Village Apartments of Charleston, LLC
Operating Agreement

(b)    Notwithstanding anything contained in this Agreement to the contrary, each Member hereby represents and warrants to the Company, the Managers and to each other that (i) the Membership Interest of such Member is acquired for investment purposes only, for the Member's own account, and not with a view to or in connection with any distribution, reoffer, resale or other disposition not in compliance with the Securities Act of 1933, as amended, and the rules and regulations thereunder (the "**1933 Act**") and applicable state securities laws; (ii) such Member, alone or together with the Member's representatives, possesses such expertise, knowledge and sophistication in financial and business matters generally, and in the type of transactions in which the Company proposes to engage in particular, that the Member is capable of evaluating the merits and economic risks of acquiring and holding the Membership Interest and the Member is able to bear all such economic risks now and in the future; (iii) such Member has had access to all of the information with respect to the Membership Interest acquired by the Member under this Agreement that the Member deems necessary to make a complete evaluation thereof and has had the opportunity to question the other Members and the Managers concerning such Membership interest; (iv) such Member's decision to acquire the Membership Interest for investment has been based solely upon the evaluation made by the Member; (v) such Member is aware that the Member must bear the economic risk of an investment in the Company for a indefinite period of time because Membership Interests have not been registered under the 1933 Act or under the securities laws of various states and, therefore, cannot be sold unless such Membership Interests are subsequently registered under the 1933 Act and any applicable state securities laws or an exemption from registration is available; (vi) such Member is aware that only the Company can take action to register Membership Interests and the Company is under no such obligation and does not propose to attempt to do so; (vii) such Member is aware that this Agreement provides restrictions on the ability of a member to sell, transfer, assign, mortgage, hypothecate or otherwise encumber the Member's Membership Interest; (viii) such Member agrees that the Member will truthfully and completely answer all questions, and make all covenants, that the Company or the Managers may, contemporaneously or hereafter, ask or demand for the purpose of establishing compliance with the 1933 Act and applicable state securities laws.

13.3    **Notice**.

(a)    All notices, demands or requests provided for or permitted to be given pursuant to this Agreement must be in writing.

(b)    All notices, demands and requests to be sent to any Manager or Member pursuant to this Agreement shall be deemed to have been properly given or served if addressed to such person at the address as it appears on the Company records and (i) personally delivered, (ii) deposited for next day delivery by Federal Express, or other similar overnight courier services, (iii) deposited in the United States mail, prepaid and registered or certified with return receipt requested or (iv) transmitted via telecopier or other similar device to the attention of such person with receipt acknowledged.

(c)    All notices, demands and requests so given shall be deemed received: (i) when actually received, if personally delivered, deposited for next day delivery with an

EXHIBIT 6

overnight courier or telecopied, or (ii) as indicated upon the return receipt if deposited in the United States mail.

(d)    The Managers and Members shall have the right from time to time, and at any time during the term of this Agreement, to change their respective addresses by delivering to the other parties written notice of such change in the manner prescribed in section 13.3(b).

(e)    All distributions to any Member shall be made at the address at which notices are sent unless otherwise specified in writing by any such Member.

13.4    **Creditors Not Benefited**. Nothing in this Agreement is intended to benefit any creditor of the Company. No creditor of the Company will be entitled to require the Member to solicit or accept any loan or additional capital contribution for the Company or to enforce any right which the Company may have against the Member, whether arising under this Agreement or otherwise.

13.5    **Amendments**. This Agreement may not be modified or amended except with the written consent of Members holding a majority of the interests in the capital accounts of the Company (or such greater percentage as required by law or in order to maintain the tax status of the Company), and such writing must refer specifically to this Agreement. Notwithstanding the foregoing, no provision which references the approval of a larger portion of the interests in the capital accounts of the Company for the taking of any action may be amended without the written consent of Members holding such larger portion of such interests.

13.6    **Governing Law; Arbitration**. All claims or disputes arising between the parties bound by this Agreement which relate to this Agreement or the breach thereof shall be submitted to one arbitrator for binding arbitration, which arbitration shall be conducted in Clay County, Indiana, by and in accordance with the rules of the American Arbitration Association. Notwithstanding the foregoing, parties bound by this Agreement may bring an injunction proceeding before a court of equity in the event that damages for a breach are not likely to be an adequate remedy, such proceeding to be brought in a judicial district that includes Clay County, Indiana, and all parties bound by this Agreement hereby consent to the jurisdiction of such court. All parties bound by this Agreement further agree to waive any bond requirement that may arise if either party is forced to seek injunctive relief. All parties bound by this Agreement agree that this Agreement shall be governed and construed by the laws of the state of Indiana, and that no conflict-of-laws provision shall be invoked to permit application of the laws of any other state or jurisdiction. The award rendered by the arbitrator shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. The provisions of this Agreement to arbitrate and any other written agreement to arbitrate referred to herein shall be enforceable specifically under the prevailing arbitration law of Indiana.

13.7    **Entire Agreement**. This Agreement contains the entire agreement among the parties with respect to the subject matter hereof and supersedes all prior agreements, written or oral.

EXHIBIT 6

Village Apartments of Charleston, LLC
Operating Agreement

13.8    **Waiver**. No consent or waiver, express or implied, by any Member to or for any breach or default by any other Member in the performance by such other Member of his or its obligations under this Agreement shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such other Member of the same or any other obligations of such other Member under this Agreement. Failure on the part of any Member to complain of any act or failure to act of any of the other Members or to declare any of the other Members in default, regardless of how long such failure continues, shall not constitute a waiver by such Member of his or its rights hereunder.

13.9    **Severability**. If any provision of this Agreement or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provisions to other persons or circumstances shall not be affected thereby, and the intent of this Agreement shall be enforced to the greatest extent permitted by law.

13.10    **Binding Agreement**. Subject to the restrictions on transferability set forth in this Agreement, this Agreement shall inure to the benefit of and be binding upon the undersigned Members and their respective legal representatives, successors and assigns.

13.11    **Tense and Gender**. Unless the context clearly indicates otherwise, the singular shall include the plural and vice versa. Whenever the masculine, feminine or neuter gender is used inappropriately in this Agreement, this Agreement shall be read as if the appropriate gender was used.

13.12    **Captions**. Captions are included solely for convenience of reference and if there is any conflict between captions and the text of this Agreement, the text shall control.

13.13    **Benefits of Agreement**. Nothing in this Agreement expressed or implied, is intended or shall be construed to give to any creditor of the Company or any creditor of any Member or any other person or entity whatsoever, other than the Members and the Company, any legal or equitable right, remedy or claim under or in respect of this Agreement or any covenant, condition or provisions herein contained, and such provisions are and shall be held to be for the sole and exclusive benefit of the Members and the Company.

13.14    **Counterparts**. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original for all purposes and all of which when taken together shall constitute a single counterpart instrument. Executed signature pages to any counterpart instrument may be detached and affixed to a single counterpart, which single counterpart with multiple executed signature pages affixed thereto shall constitute the original instrument.

(The remaining portion of this page is intentionally left blank.)

EXHIBIT 6

Village Apartments of Charleston, LLC
Operating Agreement

IN WITNESS WHEREOF, the undersigned, being the initial Manager(s) and all of the Members of the Company, have caused this Agreement to be duly adopted by the Company as of the April 20, 2015, and do hereby assume and agree to be bound by and to perform all of the terms and provisions set forth in this Agreement.

THE COMPANY: Village Apartments of Charleston, LLC

*Earl Miller, Manager*

———————————————————————
By: Earl Miller
Its: Manager

MEMBERS:

Southern Equity Group Trust, a Living Trust,
dated December 12, 2014

*Earl Miller, Trustee*

———————————————————————
Earl Miller, Trustee

LB 2015, LLC

———————————————————————
Lillian Lebron, Manager

RL 2015, LLC

———————————————————————
Rafael Lebron, Manager

EXHIBIT 6

Village Apartments of Charleston, LLC
Operating Agreement

### SCHEDULE I

| NAMES AND ADDRESS OF MEMBER | MEMBERSHIP INTERESTS | INITIAL CAPITAL CONTRIBUTIONS |
|---|---|---|
| Southern Equity Group Trust, a living trust, dated December 12, 2014 | 85.25% | |
| RL 2015, LLC | 7.375% | |
| LB 2015, LLC | 7.375% | |
| TOTAL | 100% | 0.00 |

EXHIBIT 6

Village  Apartments  of Charleston,  LLC
Operating  Agreement

## SCHEDULE  II

## MANAGER(S)  OF  VILLAGE  APARTMENTS  OF  CHARLESTON,  LLC  ARE  AS  FOLLOW:

Earl Miller,  a Manager of the Company effective as of the April 20, 2015.

EXHIBIT 6